**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PAMELA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 C 1553 |
| v. ) | |
| ) | |
| BRISTOL-MYERS SQUIBB COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 24, 2010, Plaintiff Pamela Johnson filed the present three-count First Amended Complaint alleging sexual harassment and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as a common law claim of intentional infliction of emotional distress ("IIED") against her employer Defendant Bristol-Myers Squibb Company ("Bristol-Myers"). Before the Court is Bristol-Myers' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Bristol-Myers' summary judgment motion as to Counts II and III of the First Amended Complaint, but denies Bristol-Myers' motion as to Johnson's sexual harassment claim as alleged in Count I.

**BACKGROUND**

On March 19, 2007, Bristol-Myers hired Johnson as a Territory Business Manager ("TBM") in the Company's Cardiovascular/Metabolics ("CV/Met") Division – a position Johnson has held at all times from March 19, 2007 until the present. (R. 38-1, Def.'s Rule 56.1 Stmt. ¶ 4; R. 40-1, Pl.'s Stmt. Facts ¶ 77.) As a CV/Met TBM, Johnson's job responsibilities

include educating physicians on the benefits and safety of particular drugs, as well as making presentations and calls to physicians. (Def.'s Stmt. Facts ¶ 5.) Johnson, who works out of her home, has had a sales territory that includes the western and southwest suburbs of Chicago. (*Id.*)

Beginning in January 2009, Gregory Baddick was Johnson's supervisor.[1] (Pl.'s Stmt. Facts ¶ 77.) Baddick remained Johnson's supervisor until Bristol-Myers terminated his employment in February 2010. (*Id.*) Prior to becoming her supervisor, Baddick had touched Johnson's breasts, told her she had amazing breasts, and asked her if she wanted to "make out" so he could teach her how to relax and open a whole new world for her.[2] (*Id.* ¶ 84; Def.'s Stmt. Facts ¶ 47.) Further, in January 2008, Johnson maintains that Baddick sent her text messages propositioning her for sex. (Pl.'s Stmt. Facts ¶ 84; Def.'s Stmt. Facts ¶ 48.) The parties dispute whether Johnson complained about Baddick's conduct to District Business Manager Mark Barrett sometime in late 2007 or early 2008. (Pl.'s Stmt. Facts ¶ 85.) The parties also dispute whether Johnson complained to Barrett throughout 2009 that Baddick had propositioned her for sex and that Baddick continued to make sexual advances towards her throughout that time period. (*Id.* ¶ 86.)

---

[1] According to Johnson, Bristol-Myers failed to produce Baddick, a managerial employee, for his deposition and Johnson could not locate Baddick by process server at Baddick's last known address provided by Bristol-Myers. Thus, the parties did not take Baddick's deposition during discovery in this matter.

[2] Bristol-Myers objects to Johnson's testimony regarding Baddick's comments as inadmissible hearsay, yet Bristol-Myers cites to the same testimony for the same or similar propositions in its Rule 56.1 Statement of Facts. (*See, e.g.,* Def.'s Stmt. Facts ¶¶ 47.) In addition, Johnson does not offer her testimony regarding Baddick's comments to prove the truth of the matter asserted, but instead offers this testimony to establish that Baddick made such comments and created a hostile work environment. *See United States v. Breland,* 356 F.3d 787, 792 (7th Cir. 2004) ("Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered.") (internal quotation and citation omitted).

Meanwhile, on January 13, 2009, shortly after Baddick became Johnson's supervisor, Baddick told Johnson during a field ride that he wanted to kiss her and then he placed Johnson's hand on his crotch. (*Id*. ¶ 88; Def.'s Stmt. Facts ¶ 49.) Prior to another field ride on January 18, 2009, Baddick sent Johnson text messages saying that he wanted to kiss her. (Pl.'s Stmt. Facts ¶ 88; Def.'s Stmt. Facts ¶ 50.) Sometime in early 2009, Johnson complained to her formal company mentor Etienne Scherrer, a Global Director in Oncology, that Baddick was behaving inappropriately. (Pl.'s Stmt. Facts ¶¶ 89, 90.) Scherrer advised Johnson to document her complaints about Baddick and told her to confront Baddick directly. (*Id.* ¶ 90.)

On August 26, 2009, Baddick and Johnson were driving to an appointment when Baddick directed Johnson to pull over the car, after which he started kissing her, took her hand and placed it on his penis, and then started rubbing his penis until he ejaculated. (*Id*. ¶ 92; Def.'s Stmt. Facts ¶ 51.) During that same day, Baddick stated that he knew how he would punish Johnson after which he threatened to take away her point position – a position that gave her the job responsibility of developing a team to launch a new product. (Pl.'s Stmt. Facts ¶ 92.) Also on that same day, Baddick threatened to force Johnson to give him oral sex if she did not properly perform one of her job responsibilities. (*Id.*) Thereafter, on September 14, 2009, Johnson met with Scherrer and informed him that something awful had happened to her after which Scherrer told her to keep documenting the incidents. (*Id*. ¶ 93.) On September 16, 2009, Scherrer forwarded to Johnson a Bristol-Myers' corporate directive concerning sexual harassment that required Johnson to confront her perpetrator, compile documents, and then bring her issue to a supervisor or Human Resources. (*Id*. ¶ 94.) Johnson read the corporate directive and attempted to follow it. (*Id*.) The document Scherrer sent Johnson, however, was for Bristol-Myers'

3

Canadian employees only. (*Id.*)

Meanwhile, after a company function on September 24, 2009, Baddick followed Johnson back to her car. (*Id.* ¶ 95; Def.'s Stmt. Facts ¶ 52.) Baddick entered Johnson's car after which Johnson attempted to push him out. (Pl.'s Stmt. Facts ¶ 95.) Baddick then sexually assaulted Johnson by forcing her to have unprotected sex with him. (*Id.*) After being sexually assaulted, Johnson continued to gather documentation and worked with her therapist in anticipation of reporting Baddick. (*Id.* ¶ 96.) Johnson also went to a gynecologist to determine if she had contracted a sexually transmitted disease or was pregnant as a result of the unprotected sex. (*Id.* ¶ 97.)

In January 2010, Johnson told Barrett that something horrible had happened to her at the September 24, 2009 dinner and that she did not want to do another field day with Baddick. (*Id.* ¶ 98; Def.'s Stmt. Facts ¶ 57.) Also in January 2010, Baddick tried to kiss Johnson and touched her breast. (Def.'s Stmt. Facts ¶ 54.) After Barrett contact Human Resources about Johnson's sexual harassment complaints in January 2010, Bristol-Myers conducted an investigation, and on February 8, 2010, Bristol-Myers terminated Baddick's employment. (*Id.* ¶¶ 58, 72.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be

4

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

**I.     Sexual Harassment/Hostile Work Environment Claim – Count I**

In Count I of her First Amended Complaint, Johnson alleges a Title VII sexual harassment/hostile work environment claim based on Baddick's conduct, including the alleged sexual assault and sexual touching.[3] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "One of the ways in which this prohibition can be violated is through sexual harassment that is either severe or pervasive enough to create an abusive working environment." *Roby v. CWI, Inc.,* 579

---

[3] Although Johnson characterizes her sexual harassment claim as a "quid pro quo" claim, "the Supreme Court abandoned the commonly used categories of hostile work environment harassment and quid pro quo harassment, opting instead to distinguish between cases in which the supervisor takes a tangible employment action against the subordinate and those in which she does not." *Wolf v. Northwest Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir. 2001) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 760-65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

F.3d 779, 784 (7th Cir. 2009); *see also Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment.").

To withstand summary judgment, a plaintiff alleging sexual harassment must establish that: (1) she was subjected to unwelcome sexual conduct, requests, or advances; (2) based on her sex; (3) the conduct was severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010); *Roby,* 579 F.3d at 784. As far as employer liability is concerned, if the sexual harassment involves a supervisor – as is the case here – the employer "will be held strictly liable for the alleged conduct if there was a tangible employment action such as a discharge, demotion, or *a change in working conditions*." *Roby,* 579 F.3d at 784 (emphasis added). If, however, there was no tangible employment action, an employer is entitled to assert an affirmative defense which requires a showing that (1) it exercised reasonable diligence to prevent and correct any harassing behavior, and (2) plaintiff unreasonably failed to take advantage of the corrective or preventative opportunities or otherwise avoid harm. *See Ellerth,* 524 U.S. at 765; *Roby,* 579 F.3d at 784. If the employer establishes both of these factors, it is not liable for a supervisor's conduct. *See Ellerth,* 524 U.S. at 765; *Roby,* 579 F.3d at 784.

In support of its motion for summary judgment, Bristol-Myers argues that it is not liable under the fourth element of Johnson's sexual harassment claim because there was no tangible employment action in connection with Baddick's sexual conduct and demands. Baddick's threats and sexual demands, along with the inappropriate sexual touching and alleged sexual assault, however, constituted a significant change in Johnson's working conditions resulting in a

6

tangible employment action. *See Roby,* 579 F.3d at 784. To clarify, the Supreme Court has defined "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761. The Seventh Circuit has treated "tangible employment action" and "materially adverse employment action" interchangeably defining one category as:

> Cases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment – an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet.

*Herrnreiter v. CHA,* 315 F.3d 742, 744-45 (7th Cir. 2002) (emphasis in original); *see also Roby,* 579 F.3d at 784 (significant change in working conditions constitutes tangible employment action). The *Herrnreiter* decision further explains that this category "includes cases of harassment – mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee." *Id.* at 745 (citing *Faragher*, 524 U.S. at 786-88).

Viewing the facts and all reasonable inferences in a light most favorable to Johnson – as the Court is required to do at this procedural posture – Johnson not only presents evidence concerning the sexual assault, touching, and statements, she also points to her deposition in which she testified that Baddick made comments that made her fear for her job, including a conversation he had with her on August 26, 2009 in which he threatened to punish her by taking

7

away her point position – a position that gave her the advantageous job responsibility of developing a team to launch a new product. (Pl.'s Stmt. Facts ¶ 92, Ex. A, Johnson Dep. at 247-48.) Johnson further testified that on the same day that Baddick forced her hand on his penis after which he ejaculated, Baddick mentioned that he would make her give him oral sex if she could not properly perform one of her job responsibilities. (Pl.'s Stmt. Facts ¶ 92; Johnson Dep., at 247-48.)

Accordingly, Johnson has presented evidence raising a genuine issue of material fact for trial that Baddick's conduct resulted in a "tangible employment action" because Baddick's threats and sexual demands, along with forcing unprotected sex on Johnson and inappropriately touching her, significantly changed the conditions of Johnson's employment thereby creating a hardship. *See Herrnreiter,* 315 F.3d. at 744-45. In short, Baddick's conduct was humiliating, degrading, unsafe, and unhealthful amounting to a significant, negative alteration in Johnson's work environment. *See id.* at 744. Therefore, the Court denies Bristol-Myers' summary judgment motion because Johnson has presented evidence raising a genuine issue of material fact for trial that Baddick's conduct resulted in a "tangible employment action."

Assuming that there was no tangible employment action, Johnson has also presented sufficient evidence raising a genuine issue of material fact for trial that Bristol-Myers failed to establish the *Ellerth* affirmative defense. *See Ellerth,* 524 U.S. at 765; *Roby,* 579 F.3d at 784. More specifically, Johnson has set forth evidence creating a genuine issue of material fact that her attempts to report Baddick's sexual misconduct and to avoid harm were not unreasonable. *See Ellerth,* 524 U.S. at 765. In explaining this affirmative defense, the *Ellerth* Court articulated:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior,

and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer *or to avoid harm otherwise.*

*Id.* (emphasis added). The *Ellerth* Court further held that "proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer...." *Id.* Indeed, as the Seventh Circuit explains, the *Ellerth* "Court made clear that compliance with an employer's designated complaint procedure is not the sole means by which an employee can fulfill her 'coordinate duty to avoid or mitigate harm.'" *Cerros v. Steel Tech., Inc.,* 398 F.3d 944, 952 (7th Cir. 2005) (citing *Faragher*, 524 U.S. at 806). As such, at "bottom, the employer's knowledge of the misconduct is what is critical, not how the employer came to have that knowledge." *Cerros,* 398 F.3d at 952. "The relevant inquiry is therefore whether the employee adequately alerted her employer to the harassment, thereby satisfying her obligation to avoid the harm, not whether she followed the letter of the reporting procedures set out in the employer's harassment policy." *Id.*; *see, e.g., Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc.,* 649 F.Supp.2d 837, 861 (N.D. Ill. 2009).

Construing the evidence and all reasonable inferences in Johnson's favor, *see Scott*, 550 U.S. at 380, the record reveals that throughout 2009 Johnson complained to District Business Manager Mark Barrett that Baddick has propositioned her for sex and continued to make sexual advances towards her. Also in 2009, Johnson complained to her formal company mentor Etienne Scherrer – a Global Director in Oncology – that Baddick was behaving inappropriately after which Scherrer advised Johnson to document her complaints about Baddick and told her to confront Baddick directly. Two days after Johnson complained to Scherrer, Scherrer forwarded

9

to Johnson a Bristol-Myers' corporate directive on sexual harassment requiring Johnson to confront her perpetrator, compile documents, and then bring her issue to a supervisor or Human Resources – although the document Scherrer sent Johnson was intended for Canadian employees only. Meanwhile, Bristol-Myers admits that any manager or supervisor who receives a complaint of discrimination or harassment must immediately notify Human Resources. (Pl.'s Stmt. Facts ¶ 87.)

Nevertheless, Bristol-Myers argues that Johnson's complaints about Baddick's sexual harassment were untimely because she did not go through the company's exact procedures when reporting the sexual misconduct. *See Jackson v. County of Racine,* 474 F.3d 493, 502 (7th Cir. 2007) ("One sign of unreasonable behavior on the plaintiffs' part is undue delay in calling the problem to the employer's attention."). As discussed above, to survive summary judgment, Johnson is not required to establish that she used the company's procedures to fulfill her burden of avoiding harm. *See Faragher*, 524 U.S. at 806; *Cerros,* 398 F.3d at 952. Moreover, Johnson complained about Baddick's sexual conduct throughout 2009, and thus her complaints were timely. Therefore, the Court denies Bristol-Myers' summary judgment motion as to the *Ellerth* affirmative defense because Johnson has raised a genuine issue of material fact for trial that she alerted Bristol-Myers to the harassment.

## II.  Sex Discrimination Claim – Count II

In Count II of her First Amended Complaint, Johnson alleges a Title VII sex discrimination claim. To avoid summary judgment on her sex discrimination claim, Johnson can use either the direct or indirect method of proof pursuant to the familiar *McDonnell Douglas* framework. *See Egonmwan v. Cook County Sheriff's Dept.,* 602 F.3d 845, 849-50 (7th Cir.

2010); *Farr v. St. Francis Hosp. & Health Ctrs.,* 570 F.3d 829, 832 (7th Cir. 2009). To establish a prima facie case under the indirect method of proof, Johnson must show that (1) she is a member of a protected class; (2) her job performance met Bristol-Myers' legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual outside of her protected class was treated more favorably. *See Egonmwan,* 602 F.3d at 850.

In its summary judgment motion, Bristol-Myers maintains that Johnson has failed to identify similarly situated men who were treated more favorably under the circumstances. In response, Johnson fails to address Bristol-Myers' arguments. In fact, Johnson did not address her sex discrimination claim under either the direct or indirect method of proof, and thus Johnson has abandoned this claim. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any discussion legal brief amounts to abandonment of claim); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (failure to offer any opposition to argument constitutes waiver). Therefore, the Court grants Bristol-Myers' summary judgment motion as to Count II of the First Amended Complaint.

### III.  Intentional Infliction of Emotional Distress – Count III

Finally, in Count III of her First Amended Complaint, Johnson alleges an intentional infliction of emotional distress ("IIED") claim. To establish an IIED claim under Illinois law, a plaintiff must show that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Office,* 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel*

*Broad. Corp.,* 154 Ill.2d 1, 22, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (Ill. 1992)).

In its summary judgment motion, Bristol-Myers argues that the Illinois Human Rights Act ("IHRA") preempts Johnson's IIED claim. *See* 775 ILCS 5/8-111(C). To clarify, the Illinois Human Rights Act preempts tort claims which are "inextricably linked" to harassment or hostile work environment allegations requiring that such claims be brought before the Illinois Human Rights Commission. *See Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 902, 905 (7th Cir. 2002) (per curiam). In other words, "[p]reemption extends to claims of intentional infliction of emotional distress that depend on allegations of sexual harassment." *Id.* As the Seventh Circuit teaches, however, "'discrimination and intentional infliction of emotional distress are different wrongs,' and so torts that do not depend on a civil rights violation are not preempted." *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 604 (7th Cir. 2006) (citation omitted). Therefore, the IHRA preempts an IIED claim only when the core of a plaintiff's theory is that the plaintiff has been subjected to unlawful harassment. *See id.*; *Smith v. Chicago Sch. Reform Bd.*, 165 F.3d 1142, 1151 (7th Cir. 1999).

Here, Johnson maintains that her IIED claim is based on Baddick's sexual assault and battery and that she can prove each element of her IIED claim outside of her civil rights claim. Despite Johnson's arguments to the contrary, her IIED claim centers on Baddick's alleged sexual harassment and claims for "intentional infliction of emotional distress ("IIED") that rest solely on allegations of sexual harassment are preempted." *Griffin v. Sutton Ford, Inc.,* 452 F.Supp.2d 842, 845 (N.D. Ill. 2006) (citing *Quantock,* 312 F.3d at 902). In sum, because her IIED claim does not rest on any other behavior besides Baddick's alleged sexual harassment, the IHRA preempts Johnson's IIED claim. *See Naeem,* 444 F.3d at 605; *Quantock*, 312 F.3d at 902.

Accordingly, the Court grants Bristol-Myers' summary judgment motion as to Count III of the First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's summary judgment motion pursuant to Federal Rule of Civil Procedure 56(c).

**Date:** October 1, 2010

                        **ENTERED**

_/s/ Amy J. St. Eve_
**AMY J. ST. EVE**
**United States District Court Judge**